**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.: 12-181 (EGS)** |
| | : | |
| **OH SUNG KWON, a/k/a THOMAS KWON** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD**
**DEPARTURE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, the United States Attorney for

the District of Columbia, hereby submits this motion for downward departure pursuant to Section

5K1.1 of the United States Sentencing Guidelines ("USSG" or "Guidelines") and memorandum in

aid of sentencing concerning the defendant, Oh Sung Kwon, also known as Thomas Kwon

("Kwon").  The parties stipulated, and the Pre-Sentence Report ("PSR") agreed, that the

defendant's total offense level under the Guidelines is 28 and he falls under Criminal History

Category II (87-108 months).  *See* PSR at p. 26, ¶ 156.

**SUMMARY OF THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government submits that a sentence at an offense level 28 (pre-departure) is reasonable

in light of, among other things, the seriousness of the offense, the need to specifically deter the

defendant, and the need to afford adequate general deterrence.  The defendant was a critical

participant in two large bribery schemes and a separate mortgage fraud scheme.  In his role as

co-founder, Chief Financial Officer, and *de facto* head of a Northern Virginia based government

contracting firm, Avenciatech, Inc. ("Avenciatech"), the defendant (1) assisted his close friend,

Alex Cho,[1] the former Chief Technology Officer at Nova Datacom, LLC ("Nova Datacom"), to

obtain approximately $700,000 in cash to pay some of that cash in the form of bribes to Kerry F.

Khan,[2] a public official at the U.S. Army Corps of Engineers ("USACE"), to obtain and retain

business for Nova Datacom, (2) engaged in a bribery scheme with a former Army contracting

officer, referred to as Public Official C, to obtain and retain business for Avenciatech, and (3)

worked with Cho and Cho's sister, Min Cho,[3] the President of Nova Datacom, to obstruct the

criminal investigation into Nova Datacom's corrupt payments in an effort to prevent the

investigation from expanding to Avenciatech's corrupt payments.   In addition, in his role as the

Operations Manager for Onyx Financial Services ("Onyx Financial"), a Northern Virginia based

mortgage broker, Kwon engaged in mortgage fraud from January 2004 through September 2010,

with at least six fraudulent real estate sales and refinances, with loan amounts of approximately

$1,802,000.   Further, Kwon failed to file a federal income tax return in 2010 on gross income

totaling in excess of $100,000.

Since agreeing to cooperate with investigators in November 2011, however, the defendant

has attempted to make some amends for his wrongful conduct.   As described in greater detail

---

[1]      On September 20, 2011, Alex Cho pleaded guilty to a two count Information charging conspiracy to commit bribery, wire fraud, and money laundering as well as bribery of two public officials (Kerry Khan and Michael Alexander).   Cho is pending sentencing.

[2]      On May 17, 2012, Khan pleaded guilty to Counts 2 (bribery of a public official) and 4 (money laundering conspiracy) of an Indictment returned against him on September 19, 2011. Khan is cooperating in the investigation.   On July 11, 2013, Khan was sentenced to 235 months in prison.

[3]      Min Cho was referred to as Nova Datacom Employee A in Kwon's Statement of Offense.   On April 11, 2013, Min Cho pleaded guilty to a one count Information charging conspiracy to commit bribery.   The same day, Nova Datacom pleaded guilty to a four count Information that charged conspiracy to defraud the United States and three counts of bribery of public officials.   Min Cho and Nova Datacom are pending sentencing.

below, the defendant provided substantial assistance to law enforcement in the investigation and

prosecution of others, including a public official and other corrupt government contractors.   As a

result, the government recommends a six-level downward departure under Section 5K1.1 of the

Guidelines, which results in a total offense level of 22 (46-57 months).   The government

specifically recommends a sentence of 46 months imprisonment, three years of supervised release,

forfeiture of $1,188,500, and restitution in the amount of $1,188,500.

## FACTUAL BACKGROUND

On September 26, 2012, the defendant pleaded guilty to a three count Information, which

charged bribery of a public official, in violation of 18 U.S.C. § 201 (Count One), conspiracy to

commit bank fraud, in violation of 18 U.S.C. § 371 (Count Two), and willful failure to file a tax

return, in violation of 26 U.S.C. § 7203.   In the Statement of Offense, which Kwon signed as part

of his plea agreement, the parties agreed that Kwon was the co-founder of Avenciatech, which

began to obtain government contracts in October 2009.

In early 2009, according to the Statement of Offense, Kwon learned from John Lee[4]

("Lee") that a company owned by Nick Park ("Park"),[5] Unisource Enterprise Inc. ("UEI") was

having difficulty fulfilling a subcontract for a task overseen by Public Official C.   Kwon knew

from Lee and Park that Kwon would have to make payments to Public Official C in exchange for

---

[4]      Lee was referred to as Co-Conspirator 4 or CC-4 in Kwon's Statement of Offense.
On March 29, 2013, Lee pleaded guilty to a two count Information charging bribery of a public
official (Public Official C) and conspiracy to commit bank fraud.   Lee is cooperating in the
investigation and pending sentencing.

[5]      On June 20, 2012, Park, a former employee of Nova Datacom and, later, the
co-founder of UEI, pleaded guilty to a two count Information charging bribery of two public
officials (Khan and Public Official C).   Park is cooperating in the investigation and pending
sentencing.

Public Official C directing subcontracts from the Army to Avenciatech.   In or about February 2009, Kwon traveled to South Korea to meet Public Official C.   Lee introduced Kwon to Public Official C.   In exchange for Public Official C's ownership interest in Avenciatech, Public Official C agreed to use Public Official C's official position to steer subcontracts from the Army to Avenciatech.   Kwon and Public Official C agreed that Public Official C would obtain the benefit of Public Official C's undisclosed ownership interest in Avenciatech after Public Official C left the government.   Kwon, Lee, and Public Official C subsequently agreed that Kwon and Public Official C would each have a 40% ownership interest in Avenciatech, Lee would have a 10% ownership interest in Avenciatech, and 10% would be left in reserve.

Thereafter, Public Official C provided assistance to Kwon to obtain and retain business for Avenciatech.   In September 2009, Avenciatech obtained a subcontract in the amount of $366,844.80.   From December 2009 through December 2010, with Public Official C's assistance, the Army approved six change orders to the subcontract.   The change orders increased the subcontract value to $1,913,059.22.

In exchange for Public Official C's official assistance in steering subcontracts and attempting to steer subcontracts to Avenciatech, Kwon provided the following things of value, directly and indirectly, to Public Official C:

- In or about July 2009, Kwon paid $40,000 in cash to Public Official C.

- In or about August 2009, Kwon paid $1697.71 for Public Official C's hotel stay at The W Hotel in Fort Lauderdale, Florida.

- In or about December 2009, Cho and Kwon paid, collectively, approximately $30,000 for Public Official C and seven close family members of Public Official C to travel to and stay at the Atlantis Hotel in Nassau, Bahamas.

- From in or about June 2010 through in or about June 2011, Kwon provided a cellular telephone and payments for cellular telephone service to Public Official C.

- In or about July 2010, Kwon paid $1,568.52 for a rental van for Public Official C and close family members of Public Official C to use.

- In or about July 2010, Kwon assisted Public Official C to obtain financing to purchase a home in Fairfax Station, Virginia.   As part of the transaction, Public Official C made a down payment of $230,000 for the home purchase.   Public Official C did not want to make the down payment directly from Public Official C's account, however, because Public Official C would have to provide copies of Public Official C's bank statements, which had a large number of cash deposits made into the account.   As a result, Public Official C transferred $230,000 from an account in the name of Public Official C to an account in the name of an Avenciatech employee, Helen Woo.[6]   Kwon caused Woo, in turn, to execute a phony "Gift Letter" to transfer the $230,000 to the settlement company to apply to the purchase price of Public Official C's home.   The "Gift Letter" falsely referred to Public Official C as the "cousin" of the Avenciatech employee.

- In or about August 2010, a close family member of Public Official C wanted to purchase a 2010 Lexus RX450H automobile for $52,438.97.   Public Official C's close family member was not employed at the time.   Kwon agreed that Public Official C's close family member could falsely represent on the finance application for the Lexus RX450H that Public Official C's close family member was an employee of one of Kwon's companies.   Kwon also submitted false pay stubs to the finance company purporting to reflect payments from Kwon's company to Public Official C's close family member for employment verification.   Public Official C's close family member obtained financing for the Lexus RX450H.

- In or about August 2010, Kwon agreed to finance the purchase of a 2010 Lexus LS460 automobile, valued at $69,394.28, in the name of the spouse of an Avenciatech employee.   The Lexus LS460 was intended for the benefit of two other close family members of Public Official C.   As directed by Public Official C, Kwon provided the Lexus LS460 to Public Official C for the intended use of Public Official C's close family members.   From in or about August 2010 through in or about March 2011, Kwon caused monthly finance payments to be made for the Lexus LS460 totaling $11,106.66.   In or about March 2011, Public Official C returned the Lexus LS460 to Kwon because of their concern about the criminal investigation of Nova Datacom.

- From in or about September 2010 through in or about March 2011, Kwon paid $7,000 in cash per month to Public Official C.   Kwon and Public Official C agreed to cease

---

[6]      Woo pleaded guilty to misdemeanor fraud on August 9, 2013.   She is cooperating in the investigation and pending sentencing.

the cash payments because of their concern about the criminal investigation of Nova Datacom.

- In or about February 2011, as requested by Public Official C, Kwon paid $15,000 in cash to Public Official C.   Kwon and Public Official C agreed that Kwon would obtain reimbursement for the payment by submitting a fraudulent invoice as part of Avenciatech's subcontract.

- Between 2009 and 2011, KWON paid for female escort services for Public Official C in Seoul, South Korea, New York City, and Atlanta.

In addition to his bribery scheme through Avenciatech with the Army official, Kwon participated in Nova Datacom's bribery scheme with USACE officials.   Specifically, Kwon admitted that Kwon introduced Cho and Min Cho to another co-conspirator, referred to as "CC-5."   CC-5 arranged for Cho and Min Cho to provide checks to CC-5's clients in exchange for cash.   Kwon learned from Cho and Min Cho that some of the cash obtained by them from CC-5's clients, which totaled approximately $700,000, was given to Khan in exchange for Khan steering contracts and subcontracts to Nova Datacom.

In or about February 2011, Kwon, Alex Cho, and Min Cho attempted to obstruct the criminal investigation into Nova Datacom's bribe payments to USACE officials.   According to Kwon's Statement of Offense, Kwon agreed to obstruct that criminal investigation in an effort to prevent investigators from learning about Kwon's bribe payments to Public Official C and Nova Datacom's payments to Khan through CC-5.   Kwon and Cho agreed that Cho would not tell the investigators about Park or Public Official C in an attempt to keep the investigation from leading to Kwon and others.   For the same reason, Kwon and Cho also agreed to delete e-mails referencing Public Official C.   With Cho's assistance, Kwon deleted e-mails referencing Public

Official C and Cho from Kwon's personal e-mail account and Kwon's e-mail account at Avenciatech.

## ARGUMENT

**I.      The defendant provided substantial assistance in the investigation and prosecution of others.**

The government moves for a downward departure under Section 5K1.1 of the Sentencing Guidelines.  Kwon provided substantial assistance in the investigation and prosecution of the following individuals, who have each pleaded guilty to various bribery, kickback, theft, and/or money laundering charges: Alex Cho; Min Cho; Nova Datacom; John Lee; and King Everett Johnson.[7]   Kwon has also provided substantial assistance in the investigation of Public Official C, CC-5, and others.

Kwon has provided substantial assistance in a variety of ways.[8]   Kwon has debriefed on numerous occasions since being approached at his home by law enforcement agents on October 14, 2011.  Kwon was not entirely truthful and did not accept full responsibility for his conduct during the initial debriefing.  Kwon retained an attorney and debriefed with investigators and prosecutors on November 1, 2011, but the debriefing was cut short after Kwon, again, was not entirely truthful and did not accept full responsibility for his conduct.   Kwon returned for a third debriefing on November 3, 2011.  During his third debriefing, and each subsequent debriefing,

---

[7]      On March 29, 2013, Johnson pleaded guilty to a one count Information charging him with conspiracy to commit wire fraud.   As part of his plea agreement, Johnson has agreed to cooperate with the on-going criminal investigation and is pending sentencing.

[8]      Due to the ongoing nature of the criminal investigation, if requested by the Court, the government would prefer to detail the full scope of the defendant's cooperation in an under seal manner.   The recommended departure amount – six levels – takes into account the full scope of the defendant's cooperation, even though the full scope is not detailed herein.

7

Kwon has been found truthful and appears to have accepted full responsibility for his criminal conduct.

For example, during his debriefing on November 3, 2011, Kwon provided information on Alex Cho's previously unknown obstruction of the criminal investigation three months earlier, on August 18, 2011, during a consensually recorded meeting between Alex Cho, Min Cho, and Kwon.  At the time of the meeting on August 18, 2011, Alex Cho had agreed to assist investigators by, among other things, engaging in consensually recorded calls and meetings with Kwon in an effort, in part, to corroborate Alex Cho's statements to investigators that Kwon had bribed Public Official C. On August 18, 2011, at the request of law enforcement, Alex Cho met with Kwon and Min Cho at Nova Datacom's offices.  During the meeting, unbeknownst to investigators, Alex Cho intentionally and silently motioned to Kwon that Alex Cho was wearing a recording device.  Alex Cho also wrote down on a piece of paper that Kwon should say back to Alex Cho, in substance, "tell them the truth."  Alex Cho showed the piece of paper to Kwon.  As prompted by the directions written down by Alex Cho on the piece of paper, Kwon can be heard on the recording telling Alex Cho, in substance, to "tell them the truth" in response to questions put to Kwon by Alex Cho.  During the meeting, Kwon mentioned Public Official C.  In response, according to Kwon, Alex Cho silently motioned to Kwon to refrain from discussing Lim.  Kwon understood that the intent of Alex Cho's messages was to protect Kwon in the criminal investigation.  Kwon voluntarily disclosed Alex Cho's conduct to investigators on November 3, 2011, which was two months after Cho signed his plea agreement and entered a guilty plea.[9]  Cho

---

[9]     Alex Cho was interviewed about this conduct on November 4, 2011.  Cho did not dispute Kwon's account of the meeting.

did not disclose the conduct to investigators before Kwon's disclosure on November 3, 2011. Following Kwon's disclosure, law enforcement agents ceased using Cho as a cooperator and sought (and obtained) his immediate detention.

In summary, Kwon's information has been helpful in investigating and prosecuting individuals involved in the bribery scheme involving Nova Datacom/USACE and the bribery scheme involving Avenciatech/Army.   In addition, Kwon's information has been helpful in investigating and prosecuting individuals involved in mortgage fraud and tax evasion in the Washington, D.C. area.   Based on this substantial assistance, the government recommends a six-level downward departure, resulting in a total adjusted offense level of 22 (46-57 months).

**II.     Based on the sentencing factors in 18 U.S.C. § 3553(a), the government recommends a sentence of 46 months imprisonment.**

**A.       The applicable advisory Guidelines range should be 87-108 months.**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 552 U.S. 38, 49 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range").   Although advisory, the Guidelines assure some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.   Reference to the Guidelines, while carefully considering the factors set forth in 18 U.S.C. § 3553(a) particularly relevant to an individual defendant, minimizes the disfavored result of basing sentences on the luck of the draw in judicial assignments.   Therefore, the Supreme Court has held that "district

courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

Here, the parties stipulated to the following applicable Guidelines:

| | | |
|---|---|---|
| § 2C1.1(a)(1) | Base Offense Level | 12 |
| § 2C1.1(b)(1) | More than one bribe | 2 |
| § 2C1.1(b)(2) | More than $200,000 in intended payments | 12 |
| § 3B1.1(c) | Manager/Supervisor | 2 |
| § 3C1.1 | Obstruction of Justice | 2 |
| § 3D1.4 | Grouping | 1 |
| § 3E1.1(a) and (b) | Acceptance | (3) |

Total                                                                                              28

The PSR agreed with the parties' stipulated Guidelines range.

**B.    The nature and circumstances of the offense support a within-Guidelines sentence.**

The nature and circumstances of the offense demonstrate that a Guidelines sentence at an offense level 28 (pre-departure) is reasonable in light of nature and circumstances of the offenses of conviction.   The defendant was a critical participant in the Nova Datacom/USACE bribery scheme.   Through the defendant's connection, Alex Cho and Min Cho were able to obtain approximately $700,000 in cash from CC-5's clients.   Kwon knew that Alex Cho was using some amount of the cash to pay bribes to a USACE public official, Kerry Khan.

Kwon was also a critical participant in his own bribery scheme involving Avenciatech. As the *de facto* head of Avenciatech, Kwon directed the payment of things of value in excess of $200,000 to an Army public official, Public Official C.   Through the bribe payments, Kwon was able to obtain and retain nearly $2 million in Army subcontracts.   Further, as Kwon admitted, his bribery scheme involved, in part, submitting phony invoices to a government prime contractor to fund some of the bribe payments made to Public Official C.

At the same time that he was involved in multiple bribery schemes, Kwon was also involved in a multi-million dollar mortgage fraud scheme.   As the Operations Manager for Onyx Financial, Kwon participated in a multi-faceted bank fraud scheme that involved false loan applications, forged documents, straw buyers, and fraudulent settlements.   Kwon's mortgage fraud scheme involved at least six fraudulent real estate sales and refinances, with loan amounts of approximately $1,802,000 and actual losses in excess of $1 million.

Such conduct falls squarely within the heartland of the Guidelines concerning bribery and bank fraud.

### C.        The history and characteristics of the defendant.

The history and characteristics of the defendant demonstrate that a Guidelines sentence at an offense level 28 (pre-departure) is reasonable in light of the need to protect society from the defendant for a significant period of time.   After obtaining his high school degree in 1984, the defendant worked as an auto mechanic with his father before going into the real estate business in 1992.   From 1994 until 1998, the defendant worked at Metropolitan Mortgage Corporation. While employed at Metropolitan Mortgage Corporation, the defendant engaged in a mortgage fraud that was very similar to the scheme the defendant operated at Onyx Financial from 2004 through 2010.   The defendant was convicted of wire fraud in 2001 in connection with the mortgage fraud scheme at Metropolitan Mortgage Corporation and imprisoned for four months. The defendant's supervised release for the 2001 conviction expired in July 2003.   Within six months, the defendant began engaging in the same type of mortgage fraud scheme at Onyx Financial.

The defendant's criminal behavior was not confined to mortgage fraud.  By 2009, the defendant decided to branch out to government contracts.  The defendant operated no more honestly in the government contracting realm than he was operating in the real estate realm.  The defendant provided cash to enable Nova Datacom to make bribe payments to a public official to obtain and retain business.  And the defendant paid cash to a public official to assist Avenciatech to obtain and retain business.  When a criminal investigation threatened to expose Kwon's role in both bribery schemes, Kwon obstructed justice by destroying records and encouraging his co-conspirators to pass along false information to investigators.

The defendant has no one to blame for his criminal conduct but himself.  His family's support despite his anti-social conduct that led to his conviction in 2001 provided him with an opportunity to live a respectable and decent life.  Unfortunately, the defendant's history and characteristics demonstrate a recurrent inability to abide by the law.  His inability to abide by the law merits a significant period of imprisonment.

>    **D.    The need for the sentence imposed (i) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (ii) to afford adequate deterrence; and (iii) to protect the public from further crimes of the defendant.**

Here, a Guidelines sentence at an offense level 28 (pre-departure) is also reasonable in light of the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate specific and general deterrence.  For over a two-year period, the defendant engaged in bribery, kickback, and fraud schemes concerning Nova Datacom and Avenciatech.  Those bribe payments, alone, would merit substantial time in a federal prison.  But the defendant also was convicted – for a second time – of engaging in a

mortgage fraud scheme that involved nearly $2 million in fraudulent loans and refinances.   Such mortgage fraud conduct, especially for a second offender, would also merit years in a federal prison.   Taken together, the Guidelines range of 87-108 months (pre-departure) reflects the seriousness of the bribery, kickback, and fraud schemes and provides just punishment for those offenses.

The need to specifically deter the defendant from engaging in future criminal offenses also supports the reasonableness of a Guidelines range of 87-108 months (pre-departure).   As discussed above, the defendant had served four months in prison in a similar mortgage fraud scheme before embarking on the instant mortgage fraud scheme.   His previous four month sentence, however, did not deter him from engaging once again in mortgage fraud or in doubling down on his fraudulent behavior by expanding to bribery and public corruption.

For similar reasons, the need to deter others from engaging in similar criminal conduct supports the reasonableness of a Guidelines range of 87-108 months (pre-departure).   Such a prison term would send a strong message to other government contractors that the criminal law will deal harshly with those who pay bribes or otherwise corrupt the federal contracting system.

> **E.      The kinds of sentences available**.

The maximum statutory term of imprisonment here is twenty-one years, *i.e.*, fifteen years for bribery (Count One), five years for conspiracy (Count Two), and not more than one year for willful failure to file an income tax return (Count Two).   The Court may also impose a term of supervised release of not more than three years for Counts One and Two (the supervised release terms must run concurrently).   According to the PSR, the defendant does not have the ability,

13

based on the forfeiture agreement and mandatory restitution, to pay a fine in addition to restitution. *See* PSR at p. 35, ¶ 201.

**F.     The sentencing range established by the Guidelines.**

As discussed above, the government maintains that the appropriate adjusted offense level is 28 (pre-departure).   With a Criminal History category II, which the PSR has recommended, the resulting advisory sentencing range under the Guidelines is 87-108 months.   As stated above, the government recommends a six-level downward departure under USSG § 5K1.1 based on the defendant's substantial assistance, for an adjusted total offense level of 22 (46-57 months).

**G.     Any pertinent policy statement issued by the United States Sentencing Commission.**

As stated above, the government has moved for a six-level downward departure under Section 5K1.1 of the Guidelines.

**H.     The need to avoid unwarranted sentencing disparities among defendants with similar records.**

A Guidelines sentence at an offense level 28 (pre-departure) would also be reasonable in light of the need to prevent disparities between the defendant and defendants in similar cases.   In addition, a post-departure sentence of 46 months imprisonment would be reasonable in light of the government's prior recommendations for similarly situated defendants in this investigation:

| Defendant | Offense Level and Range Per Plea Agreement (Pre-5K) | Substantial Assistance in the Investigation and Prosecution of Others | Actual Sentence | % Off Time to be Served (from Bottom of Range) |
|---|---|---|---|---|
| Alex Cho | 35 (188-235) (Plea) | Michael Alexander; Harold Babb; Min | *106* | 44% (plea) |

|  | 36 (210-262) (PSR) | Cho; Larry Corbett; Kerry Khan; Lee Khan; Nazim Khan; Thomas Kwon; Nova Datacom; Nick Park; and Public Official C | *(government recommendation, pre-Smith departure)* | 50% (PSR) |
|---|---|---|---|---|
| Kerry Khan | 39 (262-327) | Harold Babb; Min Cho; Larry Corbett; Lee Khan; Nazim Khan; and Public Official C | 235 months | 10% |
| Michael Alexander | 31 (108-135) | Harold Babb; Kerry Khan | 72 months | 33% |
| Harold Babb | 33 (135-168) | Kerry Khan | 87 months | 36% |
| James Miller | 33 (135-168) | Harold Babb; Kerry Khan | 70 months | 48% |
| Robert McKinney | 25 (57-71) | Kerry Khan; Nazim Khan | 33 months | 42% |
| Larry Corbett | 23 (46-57) | Kerry Khan; Chae Chong | 27 months | 41% |
| Theodoros Hallas | 19 (30-37) | Alex Cho; Nova Datacom | 18 months | 40% |

## I.     The need to provide restitution.

The government has calculated the amount of restitution owed by the defendant as $1,188,500 for the conspiracy to commit bank fraud offense.  Restitution is owed to Fidelity National Financial.

## CONCLUSION

For the foregoing reasons, the government respectfully moves for a downward departure under U.S.S.G. § 5K1.1, with a recommended downward departure of six levels, resulting in an adjusted total offense level of 22 (46-57 months).   As a result, the government specifically recommends a sentence of 46 months imprisonment, three years of supervised release, forfeiture in the amount of $1,188,500, and restitution in the amount of $1,188,500 payable to Fidelity National Financial.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia


By:      _____/s/_____
MICHAEL K. ATKINSON
BRYAN SEELEY
ANTHONY D. SALER
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.   20530
(202) 252-7817 (Atkinson)
Michael.Atkinson2@usdoj.gov

Dated: December 2, 2013

16